```
               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

VITOL, S.A.                       *

          Plaintiff               *

     vs.                          *    CIVIL ACTION NO. MJG-09-3430

CAPRI MARINE, LTD et al.          *

                                  *
                Defendants
*         *         *         *         *    *    *    *    *
```

## MEMORANDUM AND ORDER RE: POST-APPEAL MOTIONS

The Court has before it the following pending post-appeal motions pertaining to Spartacus Navigation Corp. ("Spartacus") and Primerose Shipping Company Ltd. ("Primerose") (collectively referred to as "S & P"):

1. Defendants Spartacus Navigation Corp.'s and Primerose Shipping Company Ltd.'s Motion to Vacate "Emergency Stay" and/or Motion to Reconsider Order Granting "Emergency Stay" [Document 154];

2. Plaintiff Vitol, S.A.'s Motion for Relief from Judgment, or in the Alternative for Permission to Amend the Complaint [Document 159];

3. Defendants Spartacus Navigation Corp.'s and Primerose Shipping Company Ltd.'s Emergency Motion for Release of Funds Deposited in Court Registry [Document 161];

and the materials submitted relating thereto.

The Court has held a hearing and has had the benefit of the arguments of counsel.

I.   SUMMARY BACKGROUND[1]

In April 2005, Plaintiff Vitol, S.A. ("Vitol") obtained a money judgment from the English High Court against Defendant Capri Marine Ltd. ("Capri").  In 2009, Vitol ascertained that the THOR, a ship owned by Spartacus and managed by Primerose, was docked in the Baltimore harbor.  Vitol then filed in this Court the verified complaint against S & P and others and obtained a Supplemental Rule B attachment of the THOR.  S & P thereafter deposited $9,301,591.55 in the Court's registry as substitute collateral (the "Substitute Collateral") and obtained the release of the THOR [Document 17].

S & P moved to vacate the attachment, pursuant to Supplemental Rule E and to dismiss the Verified Complaint against them pursuant Rule 12(b)(6).[2]  After concluding it possessed competent jurisdiction in admiralty over Vitol's action, this Court dismissed the verified complaint because the factual allegations were insufficient to state a plausible claim of alter ego liability against S & P, but granted Vitol leave to amend [Document 73].  Vitol filed the Amended Verified Complaint [Document 80] and S & P again moved to vacate the attachment and

---

[1]   For a more complete background statement see <u>Vitol, S.A. v. Primerose Shipping Co. Ltd.</u>, 708 F.3d 527 (4th Cir. 2013).

[2]   All Rule references are to the Federal Rules of Civil Procedure unless otherwise indicated.

2

dismiss the verified complaint. In the Memorandum & Order Re: Motion to Vacate Attachment & Dismiss Amended Complaint [Document 120] (the "Decision"), the Court found that Vitol had failed to allege with sufficient particularity or plausibility alter ego claims against S & P, vacated the attachment of the THOR, and dismissed the Amended Verified Complaint against S & P. In the Memorandum & Order Re: Motion To Stay [Document 139], the Court stayed release of the Substitute Collateral pending Vitol's appeal to the Fourth Circuit Court of Appeals.

On February 8, 2013, the Fourth Circuit issued its decision affirming this Court's vacatur of the attachment and dismissal of the Amended Verified Complaint against S & P[3] [Document 148]. The Court granted Vitol's request that release of the Substitute Collateral continue to be stayed [Document 152]. On March 8, 2013, the Fourth Circuit denied Vitol's petition for rehearing and rehearing <u>en banc</u> [Document 157], and on March 18, 2013, issued a Mandate making its judgment issued February 8, 2013, effective as of March 18, 2013. [Document 160].

By the instant motions:

1. S & P seek the release of the Substitute Collateral.

---

[3] As well as this Court's initial determination that it had admiralty jurisdiction over Vitol's claim to enforce the English Judgment.

3

2. Vitol seeks to have the Court vacate the Decision, reinstate the attachment and Verified Amended Complaint against S & P, permit the case to proceed to discovery, and/or permit Vitol to amend the Verified Complaint.

II. PROCEDURAL FRAMEWORK

Rule 60(b) authorizes a district court "[o]n motion and just terms" to grant relief from a final judgment for five specified reasons, including as pertinent hereto, "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" and "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." 60(b)(2),(3). However, a Rule 60(b) motion seeking relief under Rule 60(b)(2) or (b)(3) "must be made within . . . a year after the entry of the judgment." Id. 60(c). Accordingly, any claim by Vitol pursuant to Rule 60(b)(2) or (b)(3) is time barred.

Rule 60(b)(6) provides that a district court may vacate a judgment for "any other reason that justifies relief." A Rule 60(b)(6) motion is not subject to a one year time limit but must be filed "within a reasonable time." The Rule 60(b)(6) movant bears the burden of demonstrating that there is a "meritorious claim or defense and that the opposing party [will] not be

4

unfairly prejudiced by having the judgment set aside." Aikens v. Ingram, 652 F.3d 496, 501 (4th Cir. 2011).

With respect to when relief under Rule 60(b)(6) is appropriate, "[w]hile this catchall reason includes few textual limitations, its context requires that it may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5)." Id. at 500. Indeed, a party may not "circumvent the one year limitation [for fraud and new evidence claims] by invoking" the residual clause. See Srzysko v. Chase Manhattan Bank, 461 F.2d 699, 702 (2d Cir. 1972).

If a movant should prove the existence of a Rule 60(b) claim, the district court must then "balance the competing policies favoring finality of judgments and justice being done in view of all the facts, to determine, within its discretion whether relief is appropriate in each case." Square Const. Co. v. Wash. Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981).

III. DISCUSSION

    A.   Relief From the Judgment

Vitol contends that it is entitled to relief under Rule 60(b)(6) because S & P's counsel perpetrated a fraud on the

5

court by submitting perjurious witness statements in connection with S & P's dismissal and vacatur motions.

The Fourth Circuit recognizes that if a judgment was obtained by a "fraud upon the court," there could be relief pursuant to Rule 60(b)(6).[4] See Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 675 F.2d 1349, 1356 (4th Cir. 1982). But, "[n]ot all fraud is 'fraud on the court'" and the concept is narrowly construed so that "the otherwise nebulous concept" does not "overwhelm the specific provision of 60(b)(3) and its [one-year] time limitation." Id. (finding claim that party submitted false evidence at trial did not constitute "fraud on the court"). Assertion of a fraud on the court is a "serious allegation ... involving corruption of the judicial process itself." Cleveland Demolition Co. v. Azcon Scraps Corp., 827 F.2d 984, 986 (4th Cir. 1987) (internal citations and quotations omitted). Fraud upon the court is "typically confined to the most egregious

---

[4] Rule 60(d)(3) provides that Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court." It appears that claims of "fraud upon the court" may be pursued under either 60(d)(3) or 60(b)(6). See Irving v. Town of Camden, 2:10-CV-00367-MJK, 2012 WL 2155238, at *2 (D. Me. June 13, 2012). Though the Parties dispute whether Vitol raised a 60(d)(3) claim in its moving motion, the Parties have presented no material distinction between terming Vitol's fraud upon the court claim as one under 60(b)(6) or 60(d)(3).

cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." Great Coastal, 675 F.2d at 1356; Rainwater v. Mallas, 42 F.3d 1386 (4th Cir. 1994) (unpublished).

Perjury and fabricated evidence alone do not constitute grounds for relief as "fraud upon the court." Great Coastal, 675 F.2d at 1357. There must be evidence of a "deliberate scheme to directly subvert the judicial process." Id. at 1356.

The evidence provided by Vitol could be found to establish that a statement made by Mr. Nicolas Velliades (the majority owner of S & P) was incorrect. In his 2010 declaration, Velliades, after explaining that Primerose is a Marshall Islands company established in Greece, stated that the "first director of Primerose was myself" and that he served as the legal representative of the company "from March 2003 until July 2008." Velliades' Decl. [Document 159-18] ¶ 3-4. Translated Greek government records attached to Velliades' Declaration provide Primerose is a Marshall Islands company that gained legal status to do business in Greece in 2003 and that Velliades "appears to be the representative of [Primerose] in accordance with a copy of a resolution passed by the sole director of [Primerose] and dated 6th February 2003." Velliades' Decl. [Document 33-14].

7

There is no contention that these documents are false. However, Vitol has presented an unsigned document that, according to an investigator for Vitol, reflects that a Mr. Danon said that he had served as the first director of Primerose for one month beginning in 2001 at the behest of Defendant Gerassimos Kalogiratos.[5] See [Document 159], Ex. A, B. Moreover, a Vitol investigator states that he saw in the Greek government records a document that states that Mr. Danon was a director of Primerose before Velliades. At most, Vitol's evidence would establish that Mr. Danon was the first director of Primerose - analogous to an incorporator of a shelf corporation[6] in the United States. However Velliades became the director when the entity was taken off the shelf.

In context the Velliades misstatement is of minimal significance. There is nothing to indicate that S & P's counsel knew of the error or were reckless. Indeed, the Greek government documents attached to the Velliades Declaration reflect that Velliades was the director at all times pertinent to the instant litigation.

---

[5]  Vitol takes the position that Gerassimos is the real owner and controller of S & P and Mr. Velliades is simply his puppet.

[6]  The Parties appear to agree that prior to gaining Greek status in 2003, Primerose was a "shelf company" based in the Marshall Islands and not engaging in any significant business transactions.

Vitol also accuses S & P's counsel of fraud on the court by virtue of Velliades' 2010 statement that "Primrose does not share its . . . email address with any other person or company." Velliades' Decl. [Document 159-18] ¶ 10. Vitol has submitted evidence that on a few occasions prior to 2010 asserted non-Primerose employees (Gerassimos, etc.) used the Primerose email address. First, the email address statement, being in the present tense as of 2010, appears to have been literally true. If interpreted as a statement of general practice, it is not proven false by evidence of a few times in which the email address had been used by others. If taken to be a statement that no one outside of Primerose has ever used its email address, it would be false but there is nothing indicating that S & P's counsel of record knew of the falsity.

Maria Moisidou (a foreign licensed attorney who represents Gerassimos, the owner of Capri, and his family in matters not before this Court) declared in the instant case that "[a]s Mr. Velliades - the owner and manager of [S & P] has stated under oath, the Kalogiratos family has no ownership or management involvement with regard to either Primerose or Spartacus." Moisidou Decl. [Document 159-22] ¶ 22. The statement that the family had no such ownership or management involvement is, of course, debatable, although consistent with S & P's position in

9

this case. Even if there were evidence now available that would provide that Moisidou knew of specific indications of ownership or management involvement, there is nothing to indicate that S & P's counsel of record were aware that she was making a false statement.

The Court finds, without doubt, that there is no evidence that even approaches a plausible basis to accuse S & P's counsel of record of a fraud on the court or any other impropriety.

Finally, the Court must note that even if Vitol's claims of fraud were established, the fraud had no effect whatsoever. The Court held against S & P with regard to their jurisdictional contention. The Court – as did the United States Court of Appeals for the Fourth Circuit – held dismissal and vacatur was proper based upon consideration of the statements in the Amended Verified Complaint and did not, therefore, rely on any allegedly fraudulent statements made on behalf of S & P. Hence, even if there had been some "fraud upon the court," the fraud cannot be said to have undermined the judicial process "by preventing the district court or [the Fourth Circuit] from analyzing the case." See generally United States v. Estate of Stonehill, 660 F.3d 415, 454 (9th Cir. 2011).

Accordingly, the Court finds that Vitol has failed to establish that S & P or their counsel perpetrated any "fraud

upon the court" or that any exceptional circumstances exist for setting aside the Decision under Rule 60.

B.   Amendment of the Verified Complaint

Because the Court has denied Vitol's motion to vacate the Decision and reinstate the action against S & P, there is no need to address any post-judgment amendment of the pleadings. See Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) (explaining a district court may not grant a post-judgment motion to amend "unless the judgment is vacated pursuant to Rule 59(e) or Fed. R. Civ. P. 60(b)").

C.   Release of the Substitute Collateral

There is now a final judgment vacating the attachment of the THOR and dismissing the Verified Complaint against S & P. As represented by Vitol, it is not pursuing any further appellate proceedings.[7]  Therefore, there is no basis for the Court to delay release of the Substitute Collateral pursuant to 28 U.S.C. § 2042.

---

[7]   At the hearing, Vitol advised the Court that it will not petition the Supreme Court for certiorari, and agreed that if the Court declines to grant it relief under Rule 60, the Substitute Collateral must be released.

IV. CONCLUSION

For the foregoing reasons:

1. Plaintiff Vitol, S.A.'s Motion for Relief from Judgment, or in the Alternative for Permission to Amend the Complaint [Document 159] is DENIED.

2. Defendants Spartacus Navigation Corp.'s and Primerose Shipping Company Ltd.'s Motion to Vacate "Emergency Stay" and/or Motion to Reconsider Order Granting "Emergency Stay" [Document 154] is DENIED as MOOT.

3. Defendants Spartacus Navigation Corp.'s and Primerose Shipping Company Ltd.'s Emergency Motion for Release of Funds Deposited in Court Registry [Document 161] is GRANTED and the funds shall be released pursuant to separate Order.

SO ORDERED, this Tuesday, May 14, 2013.

/s/
Marvin J. Garbis
United States District Judge